UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANH BAO VY HUYNH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SUTTER HEALTH, et al.,<br><br>　　　　Defendants. | No.  2:20–cv–1757–MCE–CKD<br><br>ORDER STAYING DISCOVERY<br><br>(ECF No. 27) |

Presently before the court is the United States government's motion for a protective order temporarily staying discovery in this litigation.[1] (ECF No. 27.) The parties filed a joint statement regarding the discovery disagreement, along with a supporting declaration and exhibit. (ECF Nos. 28-28.2.) The court heard remote arguments on the motion on June 2, 2021. (ECF No. 29.) AUSA Joseph Frueh appeared for the government, and attorney Sean Musgrove appeared for the plaintiff. There were no appearances for defendant Dr. Nathan Hale Allen or for Sutter Medical Center[2] and Sutter Valley Roseville Medical Center Foundation ("the Sutter

---

[1] The matter was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

[2] The caption of the currently operative First Amended Complaint still lists "Sutter Health" as a defendant instead of Sutter Medical Center (as did the original state court complaint, see ECF No. 1.1 at 2-3), but the body of the FAC refers only to Sutter Medical Center, not Sutter Health. (ECF No. 5.)

1

defendants").[3] For the following reasons, the court GRANTS the government's motion.

**BACKGROUND**

In 2019, plaintiff Ahn Bao Vy Huynh sued Dr. Allen and the Sutter defendants in state court for medical malpractice related to Dr. Allen's November 2018 surgery on plaintiff to remove an ovarian cyst. (ECF No. 1.1 at 2-8.)

In August 2020, the United States (not yet a party to the action) filed a notice of removal based on 42 U.S.C. § 233, the Federally Supported Health Centers Assistance Act ("FSHCAA"). (ECF No. 1.) Under the FSHCAA, federally "deemed" community health centers and their employees are immune from malpractice suits for acts or omissions that occur within the scope of their employment. Instead, such suits must be brought exclusively against the United States under the Federal Tort Claims Act ("FTCA"). As discussed below, the government takes the position that at the time of the alleged malpractice, Dr. Allen was an employee of WellSpace Health ("WellSpace"), a federally funded community health center, which itself was "deemed" an employee of the Public Health Service ("PHS") under the FSHCAA. As such, the government believes Dr. Allen is immune from suit for the challenged conduct, and the government has filed a still-pending motion to (1) substitute itself as a defendant—in place of Dr. Allen—(2) dismiss the action against the United States for failure to comply with the FTCA's administrative claims process, and (3) remand the remaining claims to state court. (ECF No. 8.)

Plaintiff disputes that Dr. Allen is covered by the FTCA, arguing that she believed him to be an employee of Sutter—not WellSpace; and plaintiff has a co-pending motion for judicial review of the government's certification that Dr. Allen was a deemed federal employee at the time of the surgery. (ECF Nos. 19, 25.) Plaintiff agrees that this action should be remanded to state court in its entirety (for lack of subject-matter jurisdiction), but without the FTCA substitution and dismissal of the United States. (ECF No. 25 at 1.)

---

[3] Although Dr. Allen's absence is somewhat understandable under the circumstances, the court is disturbed by the Sutter defendants' failure to participate in drafting the ***joint*** statement and failure to attend the hearing without explanation. In the future, all parties must contribute to joint statements of any properly noticed discovery dispute in which they are involved, even if only to explain their non-opposition to the motion.

**A. Legal Background: The FSHCAA**

The FSHCAA "provides that the exclusive remedy for damages resulting from the performance of medical functions by employees of the U.S. Public Health Service acting within the scope of their employment is a claim against the United States under the FTCA." D.L. by & through Junio v. Vassilev, 858 F.3d 1242, 1244 (9th Cir. 2017) (citing 42 U.S.C. § 233(g)). "Upon certification that the defendant employee was acting within the scope of his employment at the time of the incident giving rise to the suit, the case must be removed and the proceeding deemed a tort action brought against the United States under the FTCA." Id. (citing 42 U.S.C. § 233(c)).

"The FSHCAA authorizes the Secretary of the Department of Health and Human Services [("HHS")] to deem certain health centers that receive federal funds, ***and their employees***, to be employees of the Public Health Service ('PHS') for the purposes of 42 U.S.C. § 233." Agyin v. Razmzan, 986 F.3d 168, 172 (2d Cir. 2021) (emphasis added); see 42 U.S.C. §§ 233(g)(1)(A), (g)(4) (making federally supported health centers eligible to be deemed employees of the PHS, and stating that "any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner (subject to [certain hourly minimums]), shall be deemed to be an employee of the [PHS]").

Thus, both federally supported community health centers and their employees or qualified physician contractors are immunized from tort claims arising from medical care (within the course and scope of their employment), in that such claims can only be brought against the United States under the FTCA.[4] See 42 U.S.C. § 233(a) (making the FTCA remedy the "exclusive" remedy for "damage for personal injury . . . resulting from the performance of medical . . . functions . . . by any . . . employee of the [PHS] while acting within the scope of his office or

---

[4] The FSHCAA was enacted in 1992 to reduce costs for health centers serving medically underserved populations by "essentially mak[ing] the U.S. government the medical malpractice insurer for qualifying . . . health centers, their officers, employees, and contractors, allowing these 'deemed' health centers to forgo obtaining private malpractice insurance." Dedrick v. Youngblood, 200 F.3d 744, 744-45 (11th Cir. 2000).

3

employment"); see also Hui v. Castaneda, 559 U.S. 799 (2010) ("Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.").

The FSHCAA sets out detailed rules and procedures for "deeming" an entity (i.e., health center) or individual to be a PHS employee. As relevant to this case, health centers apply to HHS annually for themselves and their employees, and HHS determines whether they are deemed to be an employee of the PHS. 42 U.S.C. §§ 233(g)(1)(D)-(E). HHS advises the applicant of its determination in a "deeming notice."

Once deemed a PHS employee, the entity and covered individuals enjoy certain procedural protections in litigation. As relevant here, within 15 days of being advised of a civil suit in state court against a deemed entity or its employee, the United States Attorney General must appear and advise the court whether HHS has determined that such entity or individual is deemed to be a PHS employee. 42 U.S.C. § 233(*l*). "Upon a certification by the Attorney General that the defendant was acting in the scope of his employment [as a PHS employee] at the time of the incident out of which the suit arose"—commonly referred to as a "scope certification"—the state court action must be removed to the encompassing federal district court. 42 U.S.C. § 233(c). Pursuant to the immunity granted to the covered individual or entity by § 233(a), the United States is then substituted as the defendant. See Castaneda, 559 U.S. at 801 (FTCA "generally authorizes substitution of the United States as the defendant"); Razmzan, 986 F.3d at 184 (stating that doctor defendant "is entitled to immunity from suit and to substitution of the United States as the defendant if this suit concerns actions he took within the scope of his employment as a deemed federal employee").

**B. Factual Background**

In September 2020, after the government removed the action under § 233(c), plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 5.) Therein, plaintiff identifies herself as a Vietnamese immigrant and claims that she sustained personal injuries resulting from the cyst removal surgery performed by Dr. Allen on November 8, 2018 at Sutter Medical Center in

downtown Sacramento.  (Id. at 2.)  She alleges that an "errant incision" caused permanent injury to her lung and colon during the surgical removal of the cyst.  (Id. at 2, 13-15.)  She also alleges that she was discharged prematurely the day after her surgery, and because she was never provided a Vietnamese medical interpreter, she could not understand or consent to the treatment she received.  (Id. at 2-3.)  Further, on November 10, 2018, because she was still feeling ill following her discharge, she presented to the Sutter Valley Roseville medical facility,[5] where they discovered her injuries.  (Id. at 2.)

Plaintiff asserts 11 state-law causes of action against all defendants, including (A) three counts of professional negligence; (B) two counts of discrimination under the Unruh Civil Rights Act (based on her Vietnamese origin); and (C) three counts of battery (one for damage to her lung, one for perforating her colon, and one for treating her without her consent because at the time of the surgery, she spoke "almost no English").  (Id.)  Plaintiff asserts that there is no basis for federal jurisdiction because Dr. Allen is not entitled to FTCA protection, there is no federal question, and the parties are not diverse.  (Id. at 5.)

The FAC includes only very generic allegations about Dr. Allen's relationship to the Sutter defendants.  Plaintiff alleges, on information and belief, that Dr. Allen was "doing business at 2825 Capitol Avenue Sacramento, California," which is the address of Sutter Medical Center in downtown Sacramento.  (Id. ¶ 11.)  And she generally alleges that "each of the Defendants was the agent and employee of each of the remaining Defendants and was at all times herein mentioned acting within the scope of said agency and employment."  (Id. ¶ 15.)

The FAC does not mention the community health center, WellSpace.  But in a January 2021 declaration, plaintiff avers that it was her "[p]rimary care doctor" at WellSpace who first advised her that she needed cyst removal.  (ECF No. 15, Huynh Decl. ¶ 2.)  Because WellSpace did not do surgeries, she was told that she "had to be referred out to another doctor," and was referred to Dr. Allen.  (Id.)  Plaintiff met with Dr. Allen on September 12, 2018, presumably for

---

[5] The FAC names "Sutter Roseville Medical Center Foundation" as the second Sutter defendant, but plaintiff has since been informed that this is not a proper defendant, as it is a purely philanthropic arm of Sutter.  (ECF No. 21.1 at 6, Bell Decl., Ex. A.)  The proper defendant appears to be "Sutter Valley Hospitals dba Sutter Roseville Medical Center."  (Id.)

pre-surgery consultation. (Id. ¶ 3.) Although plaintiff does not specify where that examination took place, the government indicates (without record citation) that Dr. Allen evaluated plaintiff on September 12 and October 31, 2018 at the WellSpace clinic on Hospital Drive in Sacramento, and then scheduled her for surgery at Sutter. (ECF No. 16 at 2.) Plaintiff avers that she "was under the belief that Dr. [Allen] was a doctor from Sutter because he was doing the surgery at Sutter Hospital." (ECF No. 15, Huynh Decl. ¶ 3.)

### C. Procedural Background

#### 1. *The Pending Motion to Substitute, Dismiss, and Remand*

In November 2020, the government moved to substitute itself as defendant in place of Dr. Allen (asserting his § 233(a) FTCA immunity), to dismiss the claims against the government as substituted (asserting failure to complete the FTCA administrative claims process before filing suit), and to remand the remainder of the case to state court. (ECF No. 8.) This motion remains under submission before the district judge assigned to this case. (ECF No. 9.)

In support of its motion, the government provided the FSHCAA "scope certification" by the Attorney General's designee that Dr. Allen "was a deemed employee of the Public Health Service and was acting within the course and scope of such employment at the time of the incidents alleged in the FAC."[6] (ECF No. 8.2 ¶ 2.) The government also provided a declaration by a Senior Attorney in HHS's Office of General Counsel averring that (1) WellSpace was deemed eligible for FTCA malpractice coverage effective January 1, 2018, and that its coverage has since continued without interruption, and (2) after reviewing the employment records submitted by WellSpace on behalf of Dr. Allen, the attorney "determined that Dr. [Allen] was an employee of WellSpace Health at the time of the incident giving rise to this suit." (ECF No. 8.3, Torres Decl. ¶¶ 5-6.) The government also attached HHS's FTCA deeming notices for WellSpace from January 1, 2018 through 2020, deeming the entity to be an employee of the PHS, and stating that FTCA coverage extended to both the entity and (as relevant) its employees and qualifying health care practitioner contractors. (ECF No. 8.4.) Lastly, the government provided a

---

[6] The scope certification was also attached to the earlier notice of removal. (ECF No. 1.3.)

6

declaration by Dr. Allen averring that (1) he is a California licensed obstetrician/gynecologist; (2) he has been "employed by WellSpace Health since April 4, 2016"; (3) he "ha[s] not billed privately for the medical services provided to [plaintiff]"; (4) he has not received monetary compensation for the services to plaintiff from any third-party payers other than the regular compensation received from WellSpace; and (5) he has not been employed by any facility other than WellSpace during the time alleged in the FAC. (ECF No. 8.5.)

### 2. *Preliminary Discovery Regarding Dr. Allen's Employment*

On October 26, 2020, plaintiff's counsel sent a meet & confer letter to all counsel proposing "preliminary discovery" on a list of nine items, which read as requests for document production. (ECF No. 13.1 at 6-7 (Musgrove Decl., Ex. A).) Plaintiff sought: (Item #1) all evidence regarding Dr. Allen's relationship with both "Sutter Sacramento" and "Sutter Roseville," including all files on how Dr. Allen obtained and maintained any "affiliation and/or privileges" at either hospital; (Items #2-4) all medical records and billing invoices for the services from both hospitals; (Items #5-8) a list of all Vietnamese interpreters on site during plaintiff's care at both hospitals, and a list of all Vietnamese interpreters who provided translation services to plaintiff; and (Item #9) a list of the attending physicians on duty while plaintiff was at either hospital. (Id.)

On November 16, 2020, all counsel met and conferred via Zoom, and it was agreed that defendants would produce all non-privileged documents responsive to plaintiff's nine requests by January 2021. On January 7, 2021, all counsel agreed to plaintiff's request to continue the hearing on the government's motion to dismiss, substitute, and remand for 90 days from the original hearing date of January 28, 2021—so that "discovery could be conducted," presumably related to Dr. Allen's employment status. (ECF No. 13.1 (Musgrove Decl.) ¶ 19 & Ex. F.)

That same day, January 7, the Sutter defendants produced documents responsive to plaintiff's nine requests, except for Item #1 to which they objected under Cal. Evid. Code §§ 1156-1157, which protect from discovery the "proceedings" and "records of organized committees of medical . . . staffs in hospitals." (ECF No. 21.1 at 17-18 (Bell Decl., Ex. C).)

Dr. Allen did not respond to plaintiff's nine discovery requests until much later, when his

7

counsel sent plaintiff's counsel a response letter on March 2, 2021. (ECF No. 22.1 at 4-7, Giardina Decl., Ex. A.) As to Item #1, Dr. Allen's counsel echoed the Evidence Code §§ 1156-1157 objection to producing any of Dr. Allen's credentialing at Sutter Sacramento; counsel stated that Dr. Allen does not have any affiliation with Sutter Roseville Medical Center so could produce no documents regarding that facility; and as to Sutter Sacramento, counsel further stated that "Dr. Allen has never been an employee of Sutter and has no contract of employment with the hospital." (Id. at 5.) As to Items #2-9, Dr. Allen's counsel stated that Dr. Allen does not have responsive documents but noted that "Dr. Allen did not personally bill for any of the care rendered to plaintiff Huynh. Dr. Allen's only compensation is provided through his employment with Well[S]pace." (Id. at 6.)

### 3. *The Pending Motion for Judicial Review of Scope Certification*

On February 8, 2021, plaintiff filed a motion for judicial review of HHS's certification of the scope of Dr. Allen's employment. (ECF No. 19.) This motion also remains under submission before the assigned district judge. (ECF No. 20.) By that motion, plaintiff is essentially challenging whether Dr. Allen "is an actual employee of Well[S]pace" and requesting that the court order further discovery on this subject. (ECF No. 19.1 at 8.)

The motion for judicial review appears to have been prompted by plaintiff's counsel's belief that no documents had yet been produced in response to his nine preliminary discovery requests. (Id. at 3.) After receiving the Sutter defendants' opposition, however, plaintiff's counsel realized that he had in fact received significant document production from the Sutter defendants the previous month.[7] (ECF No. 24 at 2-3.)

In her reply, plaintiff argues for the first time that one of the documents produced indicates that Dr. Allen was employed outside of WellSpace (id. ECF No. 24 at 6-7). Plaintiff identifies a billing document produced (in response to Sutter subpoena) by third party Anthem Blue Cross. The document contains a chart titled "Non-Pharmacy Claims Utilization for: Anh Bo

---

[7] Plaintiff avers that he "completely missed" these documents, which were emailed to his law office, due to working remotely without access to the paper file. (ECF No. 24.1 (Musgrove Decl.) ¶ 3.)

8

Vy Huynh," followed by an ID number. (ECF No. 24.1 (Musgrove Decl.) at 7, Ex. A.) The second line of the chart reflects service performed by Dr. Allen on September 12, 2018 (the day of one of plaintiff's pre-surgery consultations) with a "billed charged amount" of $162.00 and a paid amount of $0.00. (Id.) Plaintiff argues that this document contradicts Dr. Allen's declaration that he did not bill privately for medical services provided to plaintiff and that he has only been employed by WellSpace—and thus supports allowing further discovery on the jurisdictional question. (ECF No. 24.1 at 6-7.)

The government and all three defendants have opposed the motion for judicial review. (ECF Nos. 21-23.) Essentially, they argue that plaintiff has had time for discovery on this issue and has not alleged sufficient facts to trigger judicial review of the government's scope certification.

**D. The Discovery Dispute**

It was unclear from the Joint Statement exactly what discovery relief was being sought, and to what extent certain parties joined or opposed the motion. (See ECF No. 28.) The government clarified at the hearing that it is seeking a full stay of *all* discovery, pending resolution of *both* motions presently under submission with the district judge.[8] While this is fairly major request, none of the actual parties to the litigation seem all that opposed—perhaps because it turns out this motion was brought primarily as a temporary stop-gap measure to maintain the status quo until the district judge rules on plaintiff's motion for judicial review.

Dr. Allen (as one would expect) shares the government's position, although he did not join the instant motion or participate in the hearing. (ECF No. 28 at 5.) Of greater consternation, the Sutter defendants did not contribute at all to the Joint Statement, despite this motion being

---

[8] The government styled this as a motion to stay discovery pending resolution of only its motion to substitute, dismiss, and remand. (ECF No. 27 at 1; ECF No. 28 (Joint Statement) at 3, 4 (requesting a protective order prohibiting discovery until after "resolution of the United States' Motion to Substitute, Dismiss, and Remand").) The Joint Statement also confusingly quoted an email from the AUSA indicating that the government believed "any discovery *beyond Plaintiff's initial, informal request for limited/targeted jurisdictional discovery* is improper while the case remains in federal court." (ECF No. 28 at 3 (emphasis added).)

9

brought in part because they had noticed plaintiff's deposition for early June.[9] (Id. at 3.) Given the Sutter defendants' non-participation in this motion, including failure to appear at the hearing, the court presumes they do not oppose any type of discovery stay.

For her part, plaintiff provides a single paragraph broadly reasserting her position in her motion for judicial review (ECF No. 19) that limited "discovery should be conducted only as to Dr. Allen's status as an employee of Well[S]pace." (ECF No. 28 at 5.) Thus, while not explicitly stated, it is implied that plaintiff does not oppose a stay of discovery on issues related to the merits of the claims and defenses in the case.

**DISCUSSION**

### A. Standard for Stay of Discovery

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, staying discovery or limiting its scope. Fed. R. Civ. P. 26(c)(1). "[T]he Federal Rules of Civil Procedure [do] not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." Mlejnecky v. Olympus Imaging Am., Inc., 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). "Indeed, district courts look unfavorably upon such blanket stays of discovery." Id. Accordingly, a motion for a protective order seeking to preclude discovery must be supported by "good cause" and a "strong showing." See Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

A district court has broad discretion to stay discovery pending the resolution of a dispositive motion. Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988); see also Fed. R. Civ. P. 26(c). A two-pronged test is used to determine whether a protective order should issue staying discovery. Lowery v. F.A.A., 1994 WL 912632, at *3 (E.D. Cal. 1994). First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. Id. Second, the court must determine whether the pending

---

[9] An email chain attached to the Joint Statement reflects that the Sutter defendants agreed to take plaintiff's deposition "off calendar until the resolution of jurisdiction by the Court." (ECF No. 28.2 at 2.)

10

dispositive motion can be decided absent discovery. See id. "In evaluating a motion to stay, a court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." Salazar v. Honest Tea, Inc., 2015 WL 6537813, at *1 (E.D. Cal. Oct. 28, 2015) (internal citations and quotation marks omitted). This necessitates briefly reviewing the merits of a pending dispositive motion to determine whether a stay should be issued. See Spearman v. I Play, Inc., 2018 WL 1382349, at *2 (E.D. Cal. Mar. 19, 2018).

### B. Analysis

As the government stated at the hearing, this case is currently in an unusual procedural posture. The motions before the district judge will not dispose of the case in its entirety, but they will determine whether the case proceeds on any of the claims against Dr. Allen. Whether or not Dr. Allen remains a defendant—that is, regardless whether the district judge grants or denies the government's motion to substitute and dismiss—this case will be remanded for lack of subject-matter jurisdiction. The only question is whether (1) the case will be remanded in full—with Dr. Allen still a defendant—in which case the district judge will have determined that Dr. Allen is not covered by the FTCA, leaving no federal cause of action and non-diverse parties; or (2) the case will be remanded with only the claims against the Sutter defendants—in which case the district judge will have determined that the United States is the proper party in place of Dr. Allen but that the claims against the government must be dismissed for failure to first complete the FTCA's administrative claims process.[10]

Given the parties' (implied or express) positions in the Joint Statement, there is no debate that discovery should be stayed on issues related to the merits of plaintiff's claims. The court readily agrees with the government that proceeding with merits discovery would prejudice both

---

[10] Plaintiff does not contest that, if the United States is substituted for Dr. Allen, the claims against the United States (as substituted) would be subject to dismissal. HHS's counsel averred that as of August 17, 2020, no administrative tort claim had been filed by plaintiff related to WellSpace or Dr. Allen. (ECF No. 8.3 (Torres Decl.) ¶ 4.) According to the Joint Statement, on September 22, 2020, plaintiff presented to HHS an administrative claim, which is currently under review and may obviate any future proceedings involving the care plaintiff received from Dr. Allen. (ECF No. 28 at 4.)

11

the United States and Dr. Allen. The entire purpose of the FSHCAA is to prevent covered practitioners and health centers from having to finance their own malpractice defense. If discovery were to proceed while this case is in limbo in this court, Dr. Allen's personal attorney would have to continue to participate (and presumably bill for his time) in a case where Dr. Allen likely will be granted immunity under § 233(a). Meanwhile, the United States would be prejudiced by having to expend time and resources participating in discovery in a case where the claims against it (if substituted for Dr. Allen) are premature under the FTCA.

The critical question is whether to therefore stay all discovery, including discovery as to Dr. Allen's scope of employment—a subject central to both motions pending before the district judge. Discovery on that specific topic appears far less prejudicial, and indeed neither the government nor Dr. Allen objected to plaintiff's preliminary discovery on that issue before plaintiff filed her motion for judicial review.

Adding to the procedural oddness of this case is the fact that plaintiff's pending motion for judicial review of the scope certification, itself, seeks an order allowing the very discovery the government is moving to preclude by this motion. (ECF No. 19.) Although it was not at all clear from the Joint Statement, at the hearing the government clarified that its motion to stay discovery is not intended as an opposition to plaintiff's motion for judicial review (which it has already opposed). Rather, the government seeks a temporary stay of discovery pending the district judge's resolution of plaintiff's motion for judicial review—wherein the district judge might or might not order further discovery regarding the scope of Dr. Allen's employment. Therefore, the analysis of whether to fully stay discovery (and preclude that limited discovery in advance of the district judge's order) turns on the merits of the motion for judicial review. See Salazar, 2015 WL 6537813, at *1 (evaluating stay motion requires balancing the harm produced by delay in discovery against the possibility that the pre-existing motion will be resolved in a way that entirely eliminates the need for such discovery).

### 1. Law Governing Scope Certification Challenges

Plaintiff's motion for judicial review is based on the accepted procedure for challenging a government agency's "employment scope certification" for federal employees covered by the

Westfall Act, 28 U.S.C. § 2679.[11]  The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007).  The Westfall Act and the FSHCAA use "essentially the same language" to make the FTCA the exclusive remedy for claims against covered employees.  Castaneda, 559 U.S. at 806-07; see Razmzan, 986 F.3d at 179 (noting similarity between § 2679 and § 233).

The Westfall Act—like the FSHCAA—"empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . .'" Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420 (1995) (quoting 28 U.S.C. § 2679(d)(1)).  The Supreme Court in Gutierrez held that these scope certifications are "reviewable in court."  Id.  Lower courts have established standards for "reviewing" scope certifications, most often with claims of immunity and substitution under the Westfall Act, not the FSHCAA.  Because of the similar wording of the statutes, the undersigned adopts the parties' approach (in their briefing of the motion for judicial review) of using the Westfall Act review standards.

According to the Ninth Circuit:

> The Attorney General's decision regarding scope of employment certification . . . is conclusive unless challenged.  Accordingly, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993) (per curiam) (citation and footnote omitted). "To rebut the [scope] certification . . ., a plaintiff must 'allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment.'" Wuterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009) (brackets omitted) (quoting Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003)).  "[W]here a plaintiff fails to allege sufficient

////

////

////

---

[11] Formally known as the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA").

13

> facts to rebut the certification, the United States must be substituted as the defendant . . . ." Id. [12]

Saleh v. Bush, 848 F.3d 880, 889 (9th Cir. 2017) (first ellipsis added); see also Billings v. United States, 57 F.3d 797, 800 (9th Cir. 1995) ("Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of her employment at the time of the incident and is conclusive unless challenged.").

As expressed in Saleh, the plaintiff's burden is really two-fold. First, she must "allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment," 848 F.3d at 889 (cleaned up); and second, she must ultimately "present[] evidence," and "disprov[e]" the scope certification "by a preponderance of the evidence," id. ***Only if*** "the allegations in the operative complaint, taken as true, . . . establish that Defendants acted outside the scope of their employment" is plaintiff entitled to an opportunity to challenge the scope certification at an evidentiary hearing. Id. at 892 (holding an evidentiary hearing would have been "a futile exercise" because complaint's allegations did not establish beyond-scope action).

In Saleh, the Ninth Circuit (in a parenthetical citation) relied on the D.C. Circuit's rule, which it quoted and paraphrased as: "a plaintiff 'may, if necessary, attain "limited discovery" to resolve any factual disputes over' the scope-of-employment issue, but ***only if*** he or she 'alleges sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his or her employment[.]'" Id. (brackets omitted) (emphasis in Saleh) (quoting Wuterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009) (in turn quoting Stokes v. Cross, 327 F.3d 1210, 1214-15 (D.C. Cir. 2003)). Thus, the Ninth Circuit seems to embrace the D.C. Circuit's view that "[n]ot every complaint will warrant further inquiry into the scope-of-employment issue," and that "there is no right to even 'limited discovery' unless a plaintiff has made allegations sufficient to rebut the Government's certification." Wuterich, 562 F.3d at 386.

---

[12] Unlike the FSHCAA which does not expressly require substitution, the Westfall Act requires the substitution of the United States as the party defendant immediately upon the Attorney General's scope certification. See 28 U.S.C. § 2679(d).

14

### 2. *Plaintiff's Scope Certification Challenge*

Applying that rule to this case, there is little chance of plaintiff gaining an order requiring limited discovery via her motion for judicial review. The only allegations in the FAC regarding the scope of Dr. Allen's employment are conclusory. (See ECF No. 5 ¶¶ 11, 15 (alleging that Dr. Allen was "doing business at" the Sutter Sacramento address, and that "each of the Defendants was the agent and employee of each of the remaining Defendants and was at all times herein mentioned acting within the scope of said agency and employment"). The scope of employment referenced in the FAC refers to Dr. Allen's alleged employment by Sutter. True, if Dr. Allen was acting as an employee of Sutter at the time of plaintiff's visits and operation, that would show that he was acting outside of the scope of any employment by WellSpace. But the FAC contains no specific factual allegations supporting the conclusory statement that Dr. Allen was "the agent and employee" of the Sutter defendants at the relevant time. There are no allegations the court must take as true that challenge the government's scope certification. Without such allegations, the Ninth Circuit is clear that no limited discovery is warranted. See Saleh, 848 F.3d at 889 ("To rebut the [scope] certification . . . , a plaintiff must allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment.") (cleaned up).

Plaintiff argues that limited discovery is warranted because of (1) the insurance billing record already produced and (2) her subjective belief at the time of the events that Dr. Allen was a Sutter doctor. (ECF No. 28 at 5.) Even assuming that documents outside of the operative complaint could trigger judicial review of a scope certification challenge, the single line of billing data that plaintiff identifies is not terribly persuasive. The billing chart shows that Dr. Allen requested—but never received private payment for—some aspect of his consultation with plaintiff on September 12, 2018. (ECF No. 24.1 (Musgrove Decl.) at 7, Ex. A.) This does indeed call into question Dr. Allen's averment that he never "billed privately for the medical services provided to [plaintiff]." (ECF No. 8.5 (Allen Decl.) ¶ 4.) But there is no indication that this billing request—perhaps made in error, since it was ultimately unpaid—would only occur if Dr. Allen were not an employee of WellSpace, or if he was not acting in that capacity when seeing plaintiff at the WellSpace clinic. Of course, final resolution of this question is left to the district

15

judge, who will be best situated to decide whether this single piece of late-discovered evidence can compel further discovery to challenge the scope certification.[13]  The undersigned's brief inquiry into the merits of plaintiff's motion for judicial review suggests, however, that without "alleg[ing] sufficient facts that, taken as true, would establish that [Dr. Allen]'s actions exceeded the scope of his employment," plaintiff will not win the right to further limited discovery.  See Saleh, 848 F.3d at 889.  Plaintiff's "belief" at the time of care that Dr. Allen was a Sutter doctor because he was performing the surgery at a Sutter facility is of no legal consequence.

Thus, it is unlikely that plaintiff will prevail in her motion for judicial review because she has not met the standards for obtaining court-ordered discovery on the question of whether the government erroneously certified Dr. Allen as a PHS employee acting within the scope of his PHS/WellSpace employment.  With limited chance of success before the district judge, there is little danger of causing harm by staying discovery on this issue (along with all others).

In the likely event that the district judge denies plaintiff's motion for judicial review, the scope certification will stand as conclusive evidence that Dr. Allen was acting within the scope of his employment during the events of the FAC; and as a result, the United States would be substituted for Dr. Allen and the claims against the United States dismissed without any further discovery on the issue of Dr. Allen's employment scope (or any other).  If, on the other hand, the district judge grants plaintiff's motion for judicial review, this stay order will be supplanted by whatever limited discovery the district judge decides to grant plaintiff.

////
////
////
////
////
////

---

[13] The undersigned notes that defendants and the government have not had an opportunity to contest or explain that billing record, as it was first raised in plaintiff's reply brief in support of her motion for judicial review.  (See ECF No. 24-24.1.)

**ORDER**

Accordingly, it is HEREBY ORDERED that:

1. The United States' motion for an order precluding discovery (ECF No. 27) is GRANTED;

2. All discovery in this matter is stayed, pending resolution of plaintiff's motion for judicial review (ECF No. 19);

    a. Any future order by the assigned district judge requiring further discovery in connection with plaintiff's motion for judicial review shall supplant this order; and

3. Unless otherwise ordered, all discovery related to the merits of any claims or defenses in this case is stayed, pending resolution of the United States' motion to substitute, dismiss, and remand.

Dated: June 3, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.huynh.1757